United States District Court
Southern District of Texas
**ENTERED**
November 10, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ELIZABETH ESCOBEDO, *individually and on behalf of those similarly situated*, | § § § | |
| Plaintiff, | § § | |
| v. | § | CIVIL ACTION NO. 4:22-CV-538 |
| ACE GATHERING, INC., | § § § | |
| Defendant. | § § | |

## MEMORANDUM AND ORDER

Elizabeth Escobedo transported crude oil for Ace Gathering, Inc. from December 2018 to January 2022. Escobedo would load crude oil onto an 18-wheel truck, drive to a pipeline injection point in Texas, and inject the oil at the injection point. Escobedo brought this suit for herself and others similarly situated to recover unpaid overtime wages she claims Ace Gathering owes under the Fair Labor Standards Act. Since she filed suit, three other drivers have opted in to the putative class. (Docket Entry Nos. 3, 8, 20).

Ace moves for summary judgment, arguing that Escobedo and the putative collective, are not entitled to overtime pay because of a Motor Carrier Act exemption from the overtime pay requirements of the Fair Labor Standards Act. Ace argues that it falls under the exemption for carriers that "engage in activities . . . directly affecting the safety and operation of motor vehicles" transporting property in interstate travel. Escobedo argues that the exemption does not apply because the interstate travel requirement has not been met. Based on a careful review of the pleadings, motions, briefs, record, and applicable law, the court denies Ace's motion. The reasons are explained below.

I.     **The Legal Standards**

   A.     **The Summary Judgment Standard**

"Summary judgment is appropriate where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Springboards to Educ., Inc. v. Pharr-San Juan-Alamo Indep. Sch. Dist.*, 33 F.4th 747, 749 (5th Cir. 2022) (quoting FED. R. CIV. P. 56(a)).  "A fact is material if it might affect the outcome of the suit and a factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Thompson v. Microsoft Corp.*, 2 F.4th 460, 467 (5th Cir. 2021) (quoting reference omitted).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion[] and identifying" the record evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"When 'the non movant bears the burden of proof at trial,' a party moving for summary judgment 'may merely point to the absence of evidence and thereby shift to the non movant the burden of demonstrating by competent summary judgment proof that there is [a dispute] of material fact warranting trial." *MDK Sociedad De Responsabilidad Limitada v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022) (alteration in original) (quoting reference omitted).  "However[,] the movant 'need not negate the elements of the nonmovant's case.'" *Terral River Serv., Inc. v. SCF Marine Inc.*, 20 F.4th 1015, 1018 (5th Cir. 2021) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)).  "If 'reasonable minds could differ' on 'the import of the evidence,' a court must deny the motion." *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986)).

After the movant meets its Rule 56(c) burden, "the non-movant must come forward with 'specific facts' showing a genuine factual issue for trial." *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 581 (5th Cir. 2021) (quoting references omitted). The nonmovant "must identify specific evidence in the record and articulate the 'precise manner' in which the evidence" aids their case. *Shah v. VHS San Antonio Partners, L.L.C.*, 985 F.3d 450, 453 (5th Cir. 2021) (quoting reference omitted). Of course, all reasonable inferences are drawn in the nonmovant's favor. *Loftin v. City of Prentiss*, 33 F.4th 774, 779 (5th Cir. 2022). But a nonmovant "cannot defeat summary judgment with 'conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.'" *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 369 (5th Cir. 2021) (quoting reference omitted).

### B. The Fair Labor Standards Act

The Fair Labor Standards Act requires employers to pay nonexempt employees who work more than 40 hours in a week overtime pay at a rate of 1.5 times their regular pay. 29 U.S.C. § 207(a)(1). "If an employer violates the overtime-compensation requirement, it is 'liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.'" *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 379 (5th Cir. 2019) (quoting 29 U.S.C. § 216(b)).

The Motor Carrier Act exempts from overtime pay "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service." 29 U.S.C. § 213(b)(1). Federal regulations impose two requirements for an employee to be exempt from overtime pay: (1) the employee must be "employed by carriers whose transportation of passengers or property by motor vehicle is subject to [the Secretary of Transportation's] jurisdiction under section 204 of the Motor Carrier Act"; and (2) the employee

must "engage in activities of a character directly affecting the safety or operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act." 29 C.F.R. § 782.2(a). The employer has the burden of establishing that the exemption applies. *White v. U.S. Corr., L.L.C.*, 996 F.3d 302, 307 (5th Cir. 2021).

## II.     Analysis

The parties agree that Ace is a qualifying employer, "subject to [the Secretary of Transportation's] jurisdiction under section 204 of the Motor Carrier Act." 29 C.F.R. § 782.2(a). The parties also agree that Escobedo and other similarly situated Ace drivers were "engage[d] in activities of a character directly affecting the safety or operation of motor vehicles" in transporting property on public highways. *Id.*[1] The parties dispute whether the crude oil Escobedo and other drivers transported was "in interstate or foreign commerce within the meaning of the Motor Carrier Act." *Id.*

Under the Motor Carrier Act, "interstate commerce" is defined as either (1) "the actual transport of goods across state lines" or (2) "the intrastate transport of goods in the flow of interstate commerce." *Olibas v. Barclay*, 838 F.3d 442, 448 (5th Cir. 2016). Intrastate transport of goods will count as interstate commerce if there is a substantial direct relationship with interstate commerce or if drivers could reasonably expect to engage in interstate commerce as part of their job duties. *Id.* To determine if there is such a "reasonable expectation," the court considers employees on a company-wide basis. *Rychorcewicz v. Welltec, Inc.*, 768 F. App'x 25, 255–56 (5th Cir. 2019). Courts use this approach even when applying the Motor Carrier Act exemption

---

[1] The record shows that crude oil is a hazardous material, that the tanker trucks have a Gross Vehicular Weight Rating of over 10,000 pounds, and that the drivers' work involved safety-sensitive functions, including safe loading, driving on public roads, and unloading at injection points. (Docket Entry Nos. 26-4 at 11, 34–35; 26-5 at 11, 25; 26-6 at 11; 26-7 at 23).

to employees who "rarely, or never, engage in interstate commerce." *Amaya v. NOYPI Movers, L.L.C.*, 741 F. App'x 203, 206 (5th Cir. 2018) (quoting *Allen v. Coil Tubing Servs., L.L.C.*, 755 F.3d 279, 287 (5th Cir. 2014)).

Courts consider several factors in determining whether an employee has a reasonable expectation of engaging in interstate commerce for the purpose of the Motor Carrier Act exemption. Those factors include:

> (1) whether all employees in the class have similar job duties, even if only some employees in the class make interstate trips; (2) whether the employer regularly sends some drivers to interstate destinations; (3) whether the employer requires its drivers to meet DOT requirements; (4) whether and with what frequency project assignments are subject to change; (5) whether the drivers' assignments are given via dispatch based on customer need; (6) whether drivers have fixed or dedicated routes; (7) whether assignments are distributed indiscriminately; and (8) whether drivers risk termination for refusing trips from dispatch.

*Olibas*, 838 F.3d at 449 n.11. If there is no reasonable expectation of interstate activity and "the continuing duties of the employee's job have no substantial direct effect on such safety of operation or where such safety-affecting activities are so trivial, casual, and insignificant as to be de minimis," the exemption does not apply. *Id.* at 448 (quoting reference omitted).

Escobedo and the class of drivers she seeks to represent transported crude oil only within the State of Texas. Ace argues that the drivers' intrastate activity nevertheless had a substantial direct relationship to interstate commerce. Ace argues that because the oil the drivers transported to, then deposited in, the injection points "was often bound for destinations outside of Texas," the oil was "part of a 'practical continuity of movement' across state lines." *Glanville v. Dupar, Inc.*, No. 08-cv-2537, 2009 WL 3255292, at *9 (S.D. Tex. Sept. 25, 2009) (quoting *Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 568 (1943)). Ace supports its argument by noting that the crude oil its drivers transported was not refined until it completed its journey, sometimes in out-of-state refineries. Ace cites several cases in which courts applied the Motor Carrier Act

exemption when only some of the transported goods were destined for interstate travel. *Vallejo v. Garda CL Sw., Inc.*, 56 F. Supp. 3d 862, 872 (S.D. Tex. 2014); *Opelika Royal Crown Bottling Co. v. Goldberg*, 299 F.2d 37, 41–42 (5th Cir. 1962); *Galbreath v. Gulf Oil Corp.*, 413 F.2d 941, 942–43 (5th Cir. 1969).

Escobedo persuasively distinguishes each of these cases. As she correctly explains, a shipment's "essential character" is the key to determining whether it is intrastate or interstate. The essential character is determined by the "fixed and persisting intent of the shipper at the time of the shipment." *Merchants Fast Motor Lines, Inc. v. I.C.C.*, 5 F.3d 911, 917 (5th Cir. 1993). "If the shipment comes to rest *within the state of origin* and the goods are thereafter disposed of *locally,* the interstate character of the shipment is lost . . . ." *Texas v. United States*, 866 F.2d 1546, 1560 (5th Cir. 1989) (quoting reference omitted).[2]

Unlike the cases it relies on, Ace had no vested interest in the crude oil its drivers hauled crossing state lines. The record shows that Ace purchased crude oil from producers and sold that oil to a Texas customer at a Texas location. (Docket Entry Nos. 26-1 ¶ 7; 26-2 ¶ 3; 26-3 ¶¶ 12, 17). As far as Ace is concerned, its Texas customers are its end users. As a result, even if the customers ship the oil out of state, Ace does not do so, and Ace has no involvement or interest in the subsequent shipments. Even if the crude oil injected into the Texas injection points later

---

[2] This standard is well established across the appellate courts. The Third Circuit, for example, has held "the mere intersection of a company's activity and interstate commerce is not enough to warrant application of the MCA exemption." *Mazzarella v. Fast Rig Support, LLC*, 823 F.3d 786, 793 n.11 (3d Cir. 2016). The Third Circuit has also held that drivers who transported people intrastate to and from interstate transportation hubs did not qualify for the Motor Carrier Act exemption because "[t]here is no general rule that once something . . . embarks on a journey that will eventually carry it between two states, every moment of that journey, through the last conceivable moment of travel, is necessarily interstate transport under the MCA." *Packard v. Pittsburgh Transp. Co.*, 418 F.3d 246, 255 (3d Cir. 2005). Similarly, even though the Seventh Circuit held that the Motor Carrier Act exemption applied to intrastate transportation of wine when the intrastate transport concluded the wine's interstate journey. the court clarified that intrastate transport of the wine after title transferred would not qualify for the exemption. *Collins v. Heritage Wine Cellars, Ltd.*, 589 F.3d 895, 897–98 (7th Cir. 2009); *see also McLeod v. Threlkeld*, 319 U.S. 491, 494 (1943) ("[H]andlers of goods for a wholesaler who moves them interstate on order or to meet the needs of specified customers are in commerce, while those employees who handle goods after acquisition by a merchant for general local disposition are not.").

continues the journey out of state, after the oil is sold to Ace's customers and placed in the injection points, Ace has no economic interest in, or control over, the oil. Ace "earn[s] its revenue once it sells the crude oil to its customers." (Docket Entry No. 27 at 21). Ace's interests begin and end in Texas.

Ace argues that it is nonetheless entitled to summary judgment because its drivers reasonably expect to drive across state lines as part of their work. The record evidence is inconclusive and conflicting. The record shows that Ace's crude oil drivers did not drive a dedicated route; could not choose their day-to-day routes; received daily assignments from Ace's dispatch; and risked termination for refusing any assigned route. (Docket Entry No. 26-2 ¶¶ 10, 12). But the record also shows that most of the drivers on most of the routes did not cross state lines—only 26% of Ace's drivers have driven at least one interstate assignment in the previous three years—and that Ace allowed drivers to volunteer for interstate assignments. (Docket Entry No. 26-2 ¶ 13); *cf. Butcher v. TSWS, Inc.*, No. 4:10-CV-01376, 2011 WL 3793687, at *5 (S.D. Tex. Aug. 25, 2011) (denying summary judgment because the record showed that interstate assignments were given on a volunteer basis, so it could not be determined whether drivers could reasonably expect to be assigned to interstate routes). Finally, the record shows that although Ace's crude oil drivers signed employment offer letters that included language stating that the drivers might be assigned both intra- and interstate routes, the offer letters were not "a contract of employment." (Docket Entry No. 26-2).

Whether the drivers reasonably expected to drive across state lines depends on genuine factual dispute material to this determination, precluding summary judgment. Ace has not satisfied its burden of proving that the exemption is met. Ace's motion is, therefore, denied.

Ace is ordered to respond to the class certification motion (Docket Entry No. 29) by December 1, 2022. Escobedo may file a reply by December 8, 2022.

SIGNED on November 9, 2022, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge