IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ELIZABETH ESCOBEDO, Individually and on Behalf of All Others Similarly Situated, | § § § | |
| | § | |
| *Plaintiffs*, | § | |
| v. | § | CIVIL ACTION NO. 4:22-cv-00538 |
| | § | |
| ACE GATHERING, INC., | § | |
| | § | |
| *Defendant*. | § | |

## DEFENDANT ACE GATHERING, INC.'S MOTION FOR RECONSIDERATION OF ORDER DENYING MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL

Defendant Ace Gathering, Inc. ("Ace") files this Motion for Reconsideration of the Court's November 10, 2022 Memorandum and Order (the "Order") denying Ace's Motion for Summary Judgment [ECF No. 26] (the "MSJ") on Plaintiff Elizabeth Escobedo's and Opt-in Plaintiffs Jamey Alaniz, Matias Martinez, and Gene Lewis's (collectively, "Plaintiffs") claims for unpaid overtime under the Fair Labor Standards Act ("FLSA"). In the alternative, Ace respectfully requests that the Court certify the Order for interlocutory appeal and stay proceedings in this matter during the pendency of such appeal.

**TABLE OF CONTENTS**

Page

I.  SUMMARY OF ARGUMENT .................................................................................1

II.  NATURE AND STAGE OF THE PROCEEDING.............................................3

III.  ISSUES TO BE RULED UPON AND STANDARD OF REVIEW .................................3

IV.  ARGUMENT AND AUTHORITIES...............................................................4

    A.  The Court Should Reconsider the Order to Address the Proper Legal Standards for Applying the "Interstate Commerce" Element of the MCA Exemption and All Undisputed Facts Confirming Such Element is Met ...............4

        1.  The Order Applied an Incorrect Standard for Determining Whether Plaintiffs' Work was Within the "Continuous Flow of Interstate Commerce." ................................................................................5

        2.  The Order Incorrectly Found a Genuine Dispute of Material Fact as to Whether Plaintiffs had a "Reasonable Expectation" of Interstate Driving. ................................................................................14

    B.  Alternatively, the Order Should be Certified for Interlocutory Review to Permit the Fifth Circuit to Weigh in on the Correct Legal Analysis for the MCA Exemption .......................................................................22

V.  CONCLUSION...........................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Acadian Diagnostic Lab'ys, L.L.C. v. Quality Toxicology, L.L.C.*,
    965 F.3d 404 (5th Cir. 2020) ................................................................................4

*Allen v. Coil Tubing Servs., L.L.C.*,
    755 F.3d 279 (5th Cir. 2014) ..............................................................16, 20, 23

*Am. Century Proprietary Holdings, Inc. v. Am. Century Cas. Co.*,
    295 F. App'x 630 (5th Cir. 2008) ........................................................................22

*Amaya v. NOYPI Movers, L.L.C.*,
    741 F. App'x 203 (5th Cir. 2018) ........................................................................16

*Barefoot v. Mid-America Dairymen, Inc.*,
    16 F.3d 1216, 1994 WL 57686 (5th Cir. 1994) (unpub.).................................5, 16

*Beck v. Somerset Techs., Inc.*,
    882 F.2d 993 (5th Cir. 1989) ...............................................................................20

*Billizon v. Conoco, Inc.*,
    993 F.2d 104 (5th Cir. 1993) ...............................................................................20

*Brennan v. Schwerman Trucking Co. of Virginia*,
    540 F.2d 1200 (4th Cir. 1976) ............................................................................17

*Butcher v. TSWS, Inc.*,
    No. 4:10-CV-01376, 2011 WL 3793687 (S.D. Tex. Aug. 25, 2011) ...................17

*Chao v. First Class Coach Co.*,
    214 F. Supp. 2d 1263 (M.D. Fla. 2001).........................................................18, 21

*Collins v. Heritage Wine Cellars, Ltd.*,
    589 F.3d 895 (7th Cir. 2009) .........................................................................12, 13

*Dalheim v. KDFW-TV*,
    918 F.2d 1220 (5th Cir. 1990) .......................................................................19, 20

*Diaz v. Jaguar Rest. Grp., LLC*,
    649 F. Supp. 2d 1343 (S.D. Fla. 2009) ...............................................................13

*Encino Motorcars, LLC v. Navarro*,
    138 S. Ct. 1134 (2018)........................................................................................11

iii

*Faludi v. U.S. Shale Sols., L.L.C.*,
    950 F.3d 269 (5th Cir. 2020) ...................................................................................19

*Ferrara v. 4JLJ, LLC*,
    150 F. Supp. 3d 813 (S.D. Tex. 2016) .....................................................................20

*Galera v. Relief Net Rd. Servs., Inc.*,
    No. 3:13-CV-4723-L, 2015 WL 1931364 (N.D. Tex. Apr. 28, 2015) ............................16, 21

*Glanville v. Dupar, Inc.*,
    No. H–08–2537, 2009 WL 3255292 (S.D. Tex. Sept. 25, 2009) (Rosenthal, J.) ........5, 8, 9, 10

*Gonzalez v. Seal*,
    702 F.3d 785 (5th Cir. 2012) ...................................................................................23

*Gonzalez v. Smith Int'l, Inc.*,
    899 F. Supp. 2d 622 (S.D. Tex. 2010) .......................................................................18

*Henderson v. Harris Cnty., Texas*,
    51 F.4th 125 (5th Cir. 2022) ................................................................................3, 11

*Jones v. Stephens*,
    998 F. Supp. 2d 529 (N.D. Tex. 2014) ........................................................................4

*Kemp v. United States*,
    142 S. Ct. 1856 (2022) ...............................................................................................4

*Lowry Dev., L.L.C. v. Groves & Assocs. Ins., Inc.*,
    690 F.3d 382 (5th Cir. 2012) ...................................................................................3, 4

*Mazzarella v. Fast Rig Support, LLC*,
    823 F.3d 786 (3d Cir. 2016) ..................................................................................11, 12

*McLeod v. Threlkeld*,
    319 U.S. 491 (1943) ..............................................................................................13, 14

*Merchants Fast Motor Lines, Inc. v. I.C.C.*,
    5 F.3d 911 (5th Cir. 1993) .......................................................................................10

*Nunez v. Superior Oil Co.*,
    572 F.2d 1119 (5th Cir. 1978) ..................................................................................22

*Olibas v. Barclay*,
    838 F.3d 442 (5th Cir. 2016) ............................................................................. *passim*

*Packard v. Pittsburgh Transp. Co.*,
    418 F.3d 246 (3d Cir. 2005) ......................................................................................12

*Parrish v. Premier Directional Drilling,*
    L.P., 917 F.3d 369 (5th Cir. 2019) ........................................................................19

*Matter of Placid Oil Co.,*
    932 F.2d 394 (5th Cir. 1991) ..................................................................................22

*Ramos v. Capitan Corp.,*
    No. MO16CV00075RAJDC, 2017 WL 3712345 (W.D. Tex. July 7, 2017) .................18, 20

*Resch v. Krapf's Coaches, Inc.,*
    No. CIV.A. 11-6893, 2013 WL 4603011 (E.D. Pa. Aug. 29, 2013), *aff'd*, 785
    F.3d 869 (3d Cir. 2015) ..........................................................................................17

*Santa Fe Snyder Corp. v. Norton,*
    385 F.3d 884 (5th Cir. 2004) ....................................................................................4

*Shepherd v. Int'l Paper Co.,*
    372 F.3d 326 (5th Cir. 2004) ....................................................................................3

*Siller v. L & F Distributors, Ltd.,*
    109 F.3d 765 (5th Cir. 1997) ...........................................................................7, 9, 10

*Songer v. Dillon Res., Inc.,*
    618 F.3d 467 (5th Cir. 2010) ..................................................................................16

*Songer v. Dillon Res., Inc.,*
    636 F. Supp. 2d 516 (N.D. Tex. 2009), *aff'd*, 618 F.3d 467 (5th Cir. 2010) ...........21

*Starrett v. Bruce,*
    391 F.2d 320 (10th Cir. 1968) ................................................................................16

*Texas v. United States,*
    866 F.2d 1546 (5th Cir. 1989) ...........................................................................10, 11

*Vallejo v. Garda CL Sw., Inc.,*
    56 F. Supp. 3d 862 (S.D. Tex. 2014) (Rosenthal, J.) ....................................... *passim*

*Wynne v. United States,*
    306 F. Supp. 2d 660 (N.D. Tex. 2004) ....................................................................20

**Statutes**

28 U.S.C. § 1292 ....................................................................................................3, 23, 24

**Other Authorities**

29 C.F.R. § 782.7 .........................................................................................................13

29 C.F.R. § 782.7(b)(1) ..................................................................................................6

v

46 Fed. Reg. 37,902-02, 1981 WL 115508 (Dep't of Transp. July 23, 1981)................................18

Interstate Commerce Commission, "Policy Statement – Motor Carrier Interstate
    Transportation From Out-Of-State Through Warehouses to Point in Same
    State," 8 I.C.C. 2d 470, 1992 WL 122949 (April 7, 1992) ......................................................11

## I.        SUMMARY OF ARGUMENT

Reconsideration of the Order's conclusion that Ace did not prove the "interstate commerce" element of the MCA exemption[1] from overtime pay under the FLSA is warranted for the following reasons:

(1)        The Order determined that Ace did not meet the "continuous flow of interstate commerce" method of establishing the "interstate commerce" element of the MCA exemption because Ace "had no vested interest" in the crude oil at the time Ace's customers transported it across state lines.  Respectfully, such "vested interest" requirement does not exist in either the Department of Labor's ("DOL") regulations or the applicable case law.  Instead, where goods like the crude oil at issue here continuously move in a journey across state lines—even when different entities complete different legs of that journey—the "interstate commerce" element of the MCA exemption is met.  And, even when the examination of the shipper's "fixed and persisting intent" is required, the relevant inquiry is the "fixed and persisting intent" of Ace's customers where—as here—those customers control the interstate journey of the crude oil and use Ace's crude oil gathering services to perform the first leg of their interstate transportation of such crude oil.  Thus, by focusing only on Ace's intrastate role and interest, and requiring Ace to show it had a "vested interest" in the crude oil at the time it crosses state lines, the Order applied the incorrect standard.  Focusing on Ace's customers' intent, the undisputed evidence establishes that (a) Plaintiffs only transport the crude oil at issue because Ace's customers contracted with Ace to obtain that oil; (b) Ace's customers significantly control Ace's transportation of the oil; and (c) Ace's customers transport at least some of the oil Ace delivers out of state prior to refining or processing it in any way.  Thus, in accordance with the DOL regulations, Fifth Circuit case law, and this Court's prior rulings, Ace's customers' fixed and persisting intent to transport

---

[1] As the Order recognizes, the other requirements for the MCA exemption are undisputedly met.  Order at 4 & n.1.

1

at least some of the crude oil out of the state establishes the "interstate commerce" element of the MCA exemption.  Such an outcome is also consistent with <u>this Court's statements</u>, at the Initial Conference in this case, that the fact that Plaintiffs never drove across state lines <u>does not matter</u>, as there is no "<u>argu[ment] about crude oil being part of the interstate commerce</u>."[2]

(2)    The Order separately found there was a "genuine factual dispute" regarding the "reasonable expectation" method of establishing the "interstate commerce" element of the MCA exemption based on the Court's conclusion that certain of the *Olibas*[3] factors point in favor of a "reasonable expectation" finding, whereas other factors point against such a finding.  But, at best, only one of the *Olibas* factors arguably points against Plaintiffs having a "reasonable expectation" of driving interstate routes.  The Fifth Circuit has specifically instructed that (i) no one factor is dispositive to the reasonable expectation analysis; and (ii) the Court can, and should, still decide whether Plaintiffs had a reasonable expectation of interstate driving as a matter of law on summary judgment where, as here, the facts underlying the reasonable expectation factors are <u>undisputed</u>.  That the Court should decide this issue on the undisputed facts is particularly true since this is a <u>non-jury</u> case and the Court is the ultimate fact finder. Because a review of all the undisputed facts confirms that Plaintiffs had a reasonable expectation of interstate driving, the Court should grant summary judgment in Ace's favor on that basis.

Alternatively, if the Court decides not to reconsider the Order, then Ace respectfully requests that the Court (1) certify its Order for interlocutory appeal to permit the Fifth Circuit to weigh in on these controlling issues of law regarding the proper application of the MCA exemption; and (2) stay all proceedings in this matter during the pendency of such appeal.

---

[2] Ex. A, Transcript from May 12, 2022 Initial Conference, at 5:1–10 (emphasis added).
[3] *Olibas v. Barclay*, 838 F.3d 442, n. 11 (5th Cir. 2016).

2

## II.    NATURE AND STAGE OF THE PROCEEDING

This is a suit to recover alleged unpaid overtime wages under the FLSA.  Escobedo sued

Ace, alleging that Ace misclassified her and other Crude Oil Drivers as exempt and failed to pay

them overtime under the FLSA.  Alaniz, Martinez, and Lewis filed consents to join the lawsuit.

During the Rule 16(b) Initial Conference, this Court directed Ace to file a motion for

summary judgment regarding Plaintiffs' status under the MCA exemption.  Ex. A at 8:11–14;

ECF No. 21, 22.  After conducting discovery, Ace filed its MSJ.  Plaintiffs filed a Response

[ECF No. 27] and Ace filed a Reply [ECF No. 28].

The Court issued its Order denying the MSJ on November 10, 2022.  This Motion is

timely filed within 28 days after entry of the Order under FED. R. CIV. P. 59(e), and within a year

after entry of the Order under FED. R. CIV. P. 60(c).

## III.    ISSUES TO BE RULED UPON AND STANDARD OF REVIEW

The Court must decide whether to reconsider its Order denying Ace's MSJ.  Courts view

motions for reconsideration as "either a Rule 59(e) motion to alter or amend judgment or a Rule

60(b) motion for relief from judgment or order."  *Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328

n.1 (5th Cir. 2004).  Rulings on Rule 59(e) and Rule 60(b) motions are generally reviewed for

abuse of discretion.  *Henderson v. Harris Cnty., Texas*, 51 F.4th 125, 130 (5th Cir. 2022); *Lowry

Dev., L.L.C. v. Groves & Assocs. Ins., Inc.*, 690 F.3d 382, 385 (5th Cir. 2012).

The Court must also decide whether to certify its Order for interlocutory appeal under 28

U.S.C. § 1292.  A court's decision to certify an order for interlocutory appeal is reviewed for

abuse of discretion.  *Aparicio v. Swan* Lake, 643 F.2d 1109, 1113 (5th Cir. 1981) ("[D]istrict

court did not abuse its discretion by reentering its order certifying the interlocutory appeal.").

## IV.  ARGUMENT AND AUTHORITIES

### A.  The Court Should Reconsider the Order to Address the Proper Legal Standards for Applying the "Interstate Commerce" Element of the MCA Exemption and All Undisputed Facts Confirming Such Element is Met

A Court may grant a Rule 59(e) motion to alter a judgment based on "the need to correct clear error or prevent manifest injustice." *Jones v. Stephens*, 998 F. Supp. 2d 529, 536 (N.D. Tex. 2014). "[T]here is no general definition of manifest injustice; it is a case-by-case decision based on equitable considerations." *Id.* Rule 59(e) "gives a district court the chance to rectify its own mistakes in the period immediately following its decision." *Acadian Diagnostic Lab'ys, L.L.C. v. Quality Toxicology, L.L.C.*, 965 F.3d 404, 414 (5th Cir. 2020) (quotations omitted).

Similarly, under Rule 60(b), the court may relieve a party from an order due to "mistake, inadvertence, surprise, or excusable neglect" or "any other reason that justifies relief." FED. R. CIV. P. 60(b). "The 'mistake' referred to in the rule can apply to the court's own error," and a "district court has the authority under Rule 60(b) to vacate its own judgment for reasons stated in the rule and correct its own docket." *Santa Fe Snyder Corp. v. Norton*, 385 F.3d 884, 887 (5th Cir. 2004); *see also Kemp v. United States*, 142 S. Ct. 1856, 1862 (2022) (confirming that "the term 'mistake' in Rule 60(b)(1) includes a judge's legal errors"). Rule 60(b) is to be "liberally construed in order to do substantial justice." *Lowry Dev., L.L.C.*, 690 F.3d at 385.

As discussed above, the only element of the MCA exemption at issue in this case is whether, as Crude Oil Drivers for Ace, Plaintiffs were "engaged in activities involving the interstate transportation of goods." *Vallejo v. Garda CL Sw., Inc.*, 56 F. Supp. 3d 862, 868 (S.D. Tex. 2014) (Rosenthal, J.). Reconsideration is warranted here to ensure the Court's decision on Ace's MSJ is consistent with the governing legal standards for establishing the "interstate commerce" element of the MCA exemption—and all undisputed facts relevant to such analysis.

**1.**   **The Order Applied an Incorrect Standard for Determining Whether Plaintiffs' Work was Within the "Continuous Flow of Interstate Commerce."**

As this Court has previously recognized, one way an employer can establish the "interstate commerce" requirement for the MCA exemption is by showing that the employees at issue "transport[] within a single state goods that are in the flow of interstate commerce." *Vallejo*, 56 F. Supp. 3d at 870 (quoting *Barefoot v. Mid-America Dairymen, Inc.,* 16 F.3d 1216, 1994 WL 57686, at *2 (5th Cir. 1994) (unpub.)). In other words, "[t]ransportation between two points in the same state remains interstate in nature if it is part of a 'practical continuity of movement' of goods ultimately bound for destinations beyond the state." *Barefoot*, 16 F.3d 1216; *see also Glanville v. Dupar, Inc*., No. H–08–2537, 2009 WL 3255292, at *9 (S.D. Tex. Sept. 25, 2009) (Rosenthal, J.) (same). This Court correctly recognized at the Initial Conference that there is no "argu[ment] about crude oil being part of the interstate commerce."[4]

In the Order, however, the Court incorrectly determined that—despite the <u>undisputed</u> facts that (1) the <u>only reason</u> Ace's Crude Oil Drivers transport the crude oil at issue from oil field to pipeline is to fulfill Ace's contractual commitments with its customers; and (2) those same Ace customers ship some of the crude oil transported by Ace's Crude Oil Drivers out of Texas[5]—Ace's Crude Oil Drivers' transportation of crude oil is not within the flow of interstate commerce. The Order reached this conclusion by narrowly examining only Ace's intent—and not the intent of Ace's customers—finding that Ace "had no vested interest in the crude oil its drivers hauled crossing state lines," "has no involvement or interest in the subsequent shipments," and "earn[s] its revenue once it sells the crude oil to its customers," and, thus, "Ace's interests begin and end in Texas." Order at 6–7.

---

[4] Ex. A at 5:1–10.
[5] *See* MSJ at 4–5, 9–12; Reply at 7–8; *see generally* Plaintiffs' Response (not disputing Ace's evidence on these points). Thus, the Order takes as true the fact that "the crude oil [Ace's] drivers transported was not refined until it completed its journey, sometimes in out-of-state refineries." Order at 5.

But, that is not the test for determining whether the crude oil Plaintiffs transported for Ace was in the flow of interstate commerce.  In fact, DOL regulations, as well as binding precedent from the Fifth Circuit and this Court's prior rulings, make clear that any "vested interest" inquiry is irrelevant.  Instead, where goods like the crude oil at issue here continuously move in a journey across state lines—even when different entities complete different legs of that journey—the "interstate commerce" element of the MCA exemption is met.  And, even when the examination of whether the shipper's "fixed and persisting intent" is required, the proper standard is whether the shipper—in this case Ace's customers—has a "fixed and persisting intent" to ship at least some of the crude oil out of the state before it is refined or altered in any way.  Ace's undisputed summary judgment evidence confirmed that is the case and, thus, Ace is entitled to summary judgment based on the "continuous flow" method of establishing the interstate commerce element of the MCA exemption..

> a.   Neither the DOL regulations nor applicable case law impose any "vested interest" requirement on carriers like Ace.

The applicable DOL regulation—which the Order does not address—does not impose any requirement that a carrier have any vested interest or involvement in the interstate leg of the journey where it only transports the product at issue intrastate.  To the contrary, the DOL regulation expressly states that whether the carrier is involved in the interstate leg of journey is "**not material**" to the determination of whether the product is in the flow of interstate commerce:

> Highway transportation by motor vehicle from one State to another, in the course of which the vehicles cross the State line, clearly constitutes interstate commerce under both [the MCA and FLSA]. … **The result is no different where the vehicles do not actually cross State lines** but operate solely within a single State, **if what is being transported is actually moving in interstate commerce** within the meaning of both acts; **the fact that other carriers transport it out of or into the State is not material**.

29 C.F.R. § 782.7(b)(1) (emphasis added).

Moreover, the cases Ace cited in its MSJ and Reply[6]—including <u>two cases decided by Judge Rosenthal and one Fifth Circuit opinion</u>—found drivers were exempt under the MCA under nearly identical factual circumstances and do <u>not</u> impose any "vested interest" or "involvement" requirement on carriers like Ace.  The Order does not distinguish any of these cases.  Although the Order claims that "Escobedo persuasively distinguishes each of these cases," Escobedo's Response does not even <u>mention</u> *Garda*, and only attempts to distinguish the other cases by focusing on <u>Ace</u>'s "fixed and persisting intent," which is the incorrect inquiry since it is Ace's <u>customers'</u> intent that matters, as discussed in Ace's MSJ and Reply and herein.

Specifically, in *Siller v. L & F Distributors*, the Fifth Circuit found that drivers for a carrier—L & F—who only drove in Texas were engaged in interstate commerce when: (1) L & F was an independent beer wholesaler that transported Anheuser-Busch ("AB") products in Texas; (2) <u>AB</u> shipped some products brewed in out-of-state facilities to Texas warehouses; (3) L & F drivers subsequently transported those out-of-state products, along with AB's in-state products, from Texas warehouses to Texas retailers; and (4) <u>AB</u> maintained control over the products while in L & F's possession, including by subjecting the products to temperature requirements and making decisions concerning what products would move where and when.  *Siller v. L & F Distributors, Ltd.*, 109 F.3d 765 (5th Cir. 1997).  The Fifth Circuit found that the L & F drivers were engaged in interstate commerce, <u>not</u> because of any interest of L & F in the interstate products—but because of <u>AB</u>'s "intent … to move its products continuously from its out-of-state breweries to its in-state retailer-customers, via a distributor"—*i.e.*, L & F.  *Id.*

In *Vallejo v. Garda*, <u>this Court</u> held that armored truck drivers for a carrier—Garda—who only drove in Texas were engaged in interstate commerce when the drivers: (1) transported currency and coins that originated from a U.S. mint facility outside Texas, between the Houston

---

[6] MSJ at 16–18; Reply at 7–9.

Federal Reserve, ATMs, banks, and the Houston Garda branch; and (2) transported checks either drawn on banks outside of Texas or destined for banks outside of Texas, between ATMs, banks, and the Houston Garda branch.  *Vallejo*, 56 F. Supp. 3d at 865–66, 871–73.  <u>Nowhere</u> in *Garda* is there any reference to, or evidence regarding, Garda having any "vested interest" in either the (1) currency or coins prior to them arriving at the Houston Federal Reserve or ATMs or banks (which were owned and operated, respectively, by the federal government and Garda's customers); or (2) the checks when they were transported either to or from out-of-state banks (who, again, were Garda's customers) before or after being transported by Garda's employees in Texas.  *See generally id.*  Yet, Judge Rosenthal correctly found that the "regular course of the plaintiffs' duties … at Garda's Houston facility was to engage in transportation that was part of the practical continuity of movement across state lines."  *Id.* at 873.

And in *Glanville v. Dupar*, this Court found that intrastate drivers for a carrier—Dupar— were engaged in interstate commerce when: (1) Dupar was an independent transporter of General Electric ("GE") products; (2) <u>GE</u> separately transported its products from out-of-state factories to a Dallas distribution center; (3) GE contracted with Dupar to handle just the shipment leg in the Houston, Texas area; and (4) GE controlled when and where it wants the products sent.  *Glanville*, 2009 WL 3255292, at \*\*1, 2, 11. Although there was no evidence that Dupar had any "vested interest" in the GE products prior to them arriving in Texas, Judge Rosenthal correctly concluded that Dupar's drivers were engaged in interstate commerce because <u>GE</u>—<u>not</u> Dupar— "intends to ship its goods in interstate commerce and that the delivery completed by the plaintiffs is merely the last phase of an unmistakably interstate shipment."  *Id.* at \*12.

Respectfully, it is impossible to square the Order's requirement that Ace have a "vested interest" or involvement in the crude oil crossing state lines with the DOL regulations and the

above cases, which conclusively show that such a vested interest or involvement is immaterial to the exemption analysis. Instead, applying the proper standard, Ace's undisputed summary judgment evidence establishes that Ace's customers intend to ship crude oil from in-state oil fields to refineries out of Texas, utilizing Ace's Crude Oil Drivers to complete the first leg of that interstate journey. And, the undisputed evidence shows that Ace's customers control the crude oil during the Ace Crude Oil Drivers' leg of the journey, including by (1) contracting with Ace to receive certain amounts of crude oil, which is the <u>only</u> reason Ace's Crude Oil Drivers transport such crude oil from oil fields to certain pipelines; (2) designating the pipelines from which they expect to retrieve certain amounts of crude oil (which caused Ace to deliver the oil to such pipeline); and (3) requiring that the crude oil meet certain specifications, which Ace's Crude Oil Drivers had to confirm by testing the crude oil to ensure it met those specifications.[7] These facts must result in the same outcome as *Siller*, *Vallejo*, and *Glanville*—that Plaintiffs meet the MCA exemption. The Order fails to address any of these crucial facts or examine Ace's customers' "fixed and persisting intent," which establishes that the interstate commerce element of the MCA exemption is met. Respectfully, the Order's holding otherwise was error and should be reconsidered.

           b.    <u>The cases cited in the Order do not support ignoring Ace's customers' intent to move crude oil in interstate commerce.</u>

Although, as discussed above, the Order cites no authority for the "vested interest" requirement it imposes, the Order does appear to contend that several cases limit the "fixed and persisting intent" inquiry to that only of Ace. Order at 6 & n. 2. As Ace has explained, by its plain terms, the "fixed and persisting intent" analysis only applies to "transportation confined to points in a single State <u>from a storage terminal</u> of commodities which have had a <u>prior</u>

---

[7] *See* MSJ at 4–5, 9; Reply at 7–8.

movement by rail, pipeline, motor, or water from an origin in a different State."[8]  The Order does

not analyze whether the "fixed and persisting intent" inquiry applies in this case.  However, as

discussed in detail above, if this inquiry applies, the correct focus is on the intent of the

"shipper," who in this case is Ace's <u>customer</u>—just like in *Siller* the focus was the intent of AB,

not L & F; in *Glanville* the focus was on the intent of GE, not Dupar; and in *Vallejo* the focus

was on the intent of Garda's bank customers, not Garda.  None of the cases cited in the Order

require a narrower analysis, constrained to only Ace's intent to transport the crude oil out of

Texas.

Specifically, in *Merchants Fast Motor Lines*, the Fifth Circuit upheld the Interstate

Commerce Commission's ("ICC") finding that the petitioner's Texas leg of transportation was

part of a "fixed and persisting intent" to ship products in interstate commerce, under "a totality of

the facts and circumstances" analysis using the ICC's multi-factor test.  *Merchants Fast Motor

Lines, Inc. v. I.C.C.*, 5 F.3d 911, 919 (5th Cir. 1993).  The Fifth Circuit rejected the petitioner's

arguments that the product lost its interstate character after sitting in a warehouse.  *Id.* at 917–18.

Ace's Reply addressed the ICC's "fixed and persisting intent" factors in detail, explaining why

they confirm that Ace's customers had a fixed and persisting intent to ship some of the crude oil

Ace delivered to them out of Texas.[9]  The Order does not analyze these factors or the "totality of

the facts and circumstances," as the Fifth Circuit instructs, to determine Ace's customers' intent.

In *Texas v. United States*, the Fifth Circuit also upheld the ICC's determination that an

intrastate leg of transportation was interstate in character.  *Texas v. United States*, 866 F.2d 1546,

1561 (5th Cir. 1989).  There, the ICC examined various "common incidents of through carriage,"

---

[8] Reply at 9–10 (quoting 29 C.F.R. § 782.7(b)(2) (emphasis added)).
[9] Reply at 11–12.

which would later be codified in the ICC Policy Statement discussed in Ace's Reply.[10] *Id.* at 1556.  In *Texas*—like here—the "shipper," E & B, used other, independent carriers to ship the products (1) from Georgia to a warehouse in Texas (the interstate leg); and (2) from the warehouse in Texas to customers in Texas (the intrastate leg)—yet <u>both</u> legs were deemed interstate in character.  *Texas*, 866 F.2d at 1549–50.  Importantly, the statement from *Texas* on which the Order relies[11] is inapposite to the facts of this case since at least some of the crude oil does not come to rest in Texas, nor is it disposed of in Texas—instead, it continuously travels from the oil field to refineries outside of Texas, with Ace completing the oil field to pipeline leg of such journey.  *Texas* confirms that Ace's customers are the "shipper" whose intent matters and that the nature of Plaintiffs' transportation of the crude oil is in the flow of interstate commerce.

In a footnote, the Order also cites to several out-of-circuit cases[12]—none of which support a finding that Plaintiffs' work was not part of the flow of crude oil in interstate commerce.  Order at n. 2.  In *Mazzarella*, the defendant failed to present evidence concerning the "details of [its] business's operation," which the Third Circuit explained "could theoretically be one involving a practical continuity of movement in interstate commerce, depending on, among other things, the intent of the shipper at the time shipment commenced, the role Defendants' drivers played, whether the water is altered during the fracking process, and the steps for water removal and outgoing transportation."  *Mazzarella v. Fast Rig Support, LLC*, 823 F.3d 786, 793 (3d Cir. 2016).  Here, Ace has provided precisely such evidence—in the form of <u>undisputed</u> lay

---

[10] Interstate Commerce Commission, "Policy Statement – Motor Carrier Interstate Transportation From Out-Of-State Through Warehouses to Point in Same State," 8 I.C.C. 2d 470, 1992 WL 122949, at *1 & n.1 (April 7, 1992) (describing *Texas v. United States* as one of the "decisions explaining the difference between interstate and intrastate trucking services provided within a single State" from which the ICC Policy Statement "is derived"); *see also* Reply at 10.

[11] The full statement is: "If the shipment comes to rest *within the state of origin* and the goods are thereafter disposed of *locally*, the interstate character of the shipment is lost, but temporary stoppage within the state, made necessary in furtherance of interstate carriage, does not change its character." *Id.* at 1557 (emphasis in original).

[12] Notably, these cases were decided under the since-rejected "narrow" reading of FLSA exemptions.  *See Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018) (FLSA exemptions must be given "a fair reading").

11

and expert witness declarations and documentary evidence—regarding (1) "the intent of the shipper": that Ace's customers always had the intent to ship out of Texas some of the crude oil which they contracted with Ace to deliver; (2) "the role [Ace's] drivers played": delivering crude oil from the oil field to the pipeline to fulfill Ace's contracts with those customers as part of that interstate journey; (3) "whether the [crude oil] is altered": it is not altered in any way until it reaches the refineries; and (4) "steps for … outgoing transportation": Ace's customers load the crude oil Ace delivered to the pipelines onto ships and transport it to other states or countries.[13] Thus, *Mazzarella* is wholly distinguishable from the case at bar.

In *Packard*, the Third Circuit found that "[a]lthough [defendant's] service's pick-up or drop-off point sometimes coincides in time and space with one endpoint of certain passengers' interstate journeys, there is no well established logical or logistical connection between the two." *Packard v. Pittsburgh Transp. Co.*, 418 F.3d 246, 255 (3d Cir. 2005).  Here, the undisputed evidence shows that there is such a logical and logistical "connection"—including a contractual arrangement—between Ace's intrastate transport of the crude oil and its customers' interstate transport of such crude oil: the only reason Ace transports the crude oil at issue from oil field to pipeline is to fulfill an allocation contract it already has in place with customers, as part of Ace's customers intent to ship some of that crude oil out of Texas.  Thus, *Packard* is similarly distinguishable from this case.

In *Collins*, the Seventh Circuit concluded that intrastate deliveries of wine were part of interstate commerce where other carriers transported the products "across state lines for sale by [the shipper] to customers in the destination state, and the product undergoes no alteration during its journey to the shipper's customer, and interruptions in the journey that occur in the destination state are no more than the normal stops or stages that are common in interstate sales,

---

[13] MSJ at 4–12.

such as temporary warehousing." *Collins v. Heritage Wine Cellars, Ltd.*, 589 F.3d 895, 897–98 (7th Cir. 2009).  Although this case does not involve warehousing, the other facts are similar (if reversed): Ace's customers hire Ace to transport crude oil to them for subsequent transport out of Texas, no alterations are made to the crude oil, and there are no interruptions in the journey other than normal stops or stages: oil field to pipeline $\rightarrow$  pipeline terminal to ship $\rightarrow$ ship to out-of-state refinery.  The Order's reliance on the hypothetical in *Collins*[14] is misplaced for several reasons: (1) it is pure *dicta* since it does not address the actual case facts; (2) *Collins* admittedly does not use the "fixed and persistent intent" factors under 29 C.F.R. § 782.7 or the ICC Policy Statement—neither of which discuss the transfer of title as a relevant factor—and concedes that "[o]ther cases may require a more complex approach;" and (3) it is distinguishable since the intrastate delivery of wine in that hypothetical from warehouse to retailer was <u>wholly controlled</u> by the intrastate carrier, whereas here Ace's intrastate delivery of crude oil only occurs because of its contractual arrangements with its customers and is subject to significant control by Ace's customers, including as to the amounts, destination, and specifications of the crude oil (as discussed above).   Thus, the hypothetical in *Collins* in no way supports the Order's conclusion that Plaintiffs' transportation of crude oil is not within the flow of interstate commerce.

Finally, the Order also cites to *McLeod*, which examined FLSA coverage, not the <u>different</u> standard for application of the MCA exemption.  *McLeod v. Threlkeld*, 319 U.S. 491, 492 (1943) (finding that employee was "not engaged in commerce under" the FLSA).  Moreover, *McLeod* was decided under the "very narrow" original reach of the FLSA, which only extended to employees "directly engaged in the actual movement of goods in commerce."  *See Diaz v.*

---

[14] "But suppose instead that Heritage shipped its wine to a wholesale distributor in a Chicago suburb, title passed to the distributor when the wine arrived at the distributor's warehouse, and the distributor contracted to sell the wine to retail stores and delivered it to them in his own trucks. The carriage of the wine from the warehouse to the stores would be classified as an intrastate shipment under the Motor Carrier Act even though the property shipped had originated outside the state." *Collins*, 589 F.3d at 897.

*Jaguar Rest. Grp., LLC*, 649 F. Supp. 2d 1343, 1348 (S.D. Fla. 2009) (discussing *McLeod* and explaining that FLSA coverage was "significantly expanded by the 1961 amendments"). Thus, *McLeod* provides no guidance on whether intrastate transportation of goods is within the flow of interstate commerce for purposes of the MCA exemption.

The Order's reliance on the above cases and its failure to examine whether the <u>shipper</u>— Ace's customers—had a fixed and persisting intent to move the crude oil in interstate commerce under the ICC factors (as Ace's undisputed summary judgment evidence confirms they did) is contrary to controlling law. As a result, the Order should be reconsidered.

**2.    The Order Incorrectly Found a Genuine Dispute of Material Fact as to Whether Plaintiffs had a "Reasonable Expectation" of Interstate Driving.**

Ace can independently establish the "interstate commerce" element of the MCA exemption by showing that Plaintiffs "could reasonably have been expected to [engage] in interstate commerce consistent with their job duties." *Olibas*, 838 F.3d at 448. The Order found a "genuine factual dispute" existed as to whether Plaintiffs "reasonably expected to drive across state lines" because it determined the "record evidence is inconclusive and conflicting." Order at 7. Respectfully, this conclusion is error because (1) the evidence on the *Olibas* factors is <u>undisputed</u> and overwhelmingly favors a "reasonable expectation" finding; and (2) even if the Court believes that the undisputed evidence reflects that one (or more) of the factors point against a "reasonable expectation," the Court can—and should—decide this issue as a matter of law since there are <u>no</u> disputes as to any underlying facts, and this is a <u>non-jury</u> case.

a.    <u>Proper Consideration of All Eight *Olibas* Factors Confirms Plaintiffs Reasonably Expected to Drive Interstate as a Matter of Law</u>

The Fifth Circuit instructs that in determining whether employees had a "reasonable expectation" of interstate driving:

Courts consider the following factors, <u>none of which is dispositive</u>: (1) whether all employees in the class have similar job duties, even if only some employees in the class make interstate trips; (2) whether the employer regularly sends some drivers to interstate destinations; (3) whether the employer requires its drivers to meet DOT requirements; (4) whether and with what frequency project assignments are subject to change; (5) whether the drivers' assignments are given via dispatch based on customer need; (6) whether drivers have fixed or dedicated routes; (7) whether assignments are distributed indiscriminately; and (8) whether drivers risk termination for refusing trips from dispatch.

*Olibas*, 838 F.3d at 449 n. 11 (emphasis added).

> ### i.    The Order acknowledges all but two of the Olibas factors favor a "reasonable expectation" finding.

The Order found that factors 4, 5, 6, and 8 weigh in favor of a "reasonable expectation" finding, noting that Ace's Crude Oil Drivers "did not drive a dedicated route; could not choose their day-to-day routes; received daily assignments from Ace's dispatch; and risked termination for refusing any assigned route."  Order at 7.  The Order does not specifically address factors 1 and 3, but these factors also unquestionably weigh in Ace's favor: Ace's Crude Oil Drivers, including Plaintiffs, all had similar job duties—transporting crude oil from oil fields to pipelines; and they all were required to follow DOT requirements throughout their employment with Ace.[15]

> ### ii.   Contrary to the Order's determination, the percentage of Ace Crude Oil Drivers who have driven interstate routes favors a "reasonable expectation" finding.

The Order appears to find that factor 2 (whether the employer regularly sends some drivers to interstate destinations) weighs against a "reasonable expectation" finding, noting that "only 26% of Ace's drivers have driven at least one interstate assignment in the previous three years."  Order at 7.  However, under Fifth Circuit precedent, the fact that 26% of Ace's drivers drove interstate routes <u>favors</u> a reasonable expectation finding.  As the cases cited by Ace in its MSJ and Reply show, percentages of interstate driving that are <u>significantly</u> less than 26% have

---

[15] MSJ at 4–6 & nn. 10, 14, 15, 23, 29.

been found sufficient to show a "reasonable expectation" that all drivers may be assigned interstate routes at any time.  *E.g.*, *Amaya v. NOYPI Movers, L.L.C.*, 741 F. App'x 203, 206 (5th Cir. 2018) (collecting cases finding a reasonable expectation where as little as 2.75% of the class of employees' work involved interstate transport); *Allen v. Coil Tubing Servs., L.L.C.*, 755 F.3d 279, 285–86 (5th Cir. 2014) (affirming summary judgment to employer, finding a reasonable expectation that plaintiffs could be assigned to drive interstate even though only "7 percent of projects company-wide required this class of employees to cross state lines"); *Barefoot*, 16 F.3d 1216 (finding drivers were exempt despite having only "<u>twenty</u> trips made across state lines" spread among <u>twenty-six</u> truck drivers, which the Fifth Circuit acknowledged "represent a small portion of the truck drivers' work" (emphasis added)); *Galera v. Relief Net Rd. Servs., Inc*., No. 3:13-CV-4723-L, 2015 WL 1931364, at **8–9 (N.D. Tex. Apr. 28, 2015) (finding that plaintiffs had to reasonably expect to drive in interstate commerce even though defendant only identified 3 out of 15 drivers (20%) who made interstate trips during the relevant time period).  The Order does not distinguish any of these cases or explain why it reached a different result.

Notably, there is good reason why courts "do not require a particularly high concentration of qualifying work in order to meet the MCA exemption,"[16] as the Tenth Circuit has aptly explained: "**<u>Ten minutes of driving by an unqualified driver could do more harm on the highway than a month of driving by a qualified one</u>**."  *Starrett v. Bruce*, 391 F.2d 320, 323 (10th Cir. 1968) (emphasis added); *see also Songer v. Dillon Res., Inc*., 618 F.3d 467, 474 (5th Cir. 2010) ("[T]he safety concerns facing a carrier who sent every driver on an interstate trip would be the same if the carrier sent only some or most of its drivers on interstate trips.").[17]

---

[16] *Amaya*, 741 F. App'x at 206.
[17] *See also* MSJ at 15 and Reply at 4–5, 18–19 (discussing the safety goals of the MCA, "to which Congress has attached primary importance" (quoting *Levinson v. Spector Motor Serv.*, 330 U.S. 649, 662, 681 (1947)).

> ### iii.    Ace's volunteer system cannot create a material fact issue as to Plaintiffs' reasonable expectation of interstate driving.

The other factor that the Order appears to weigh against a "reasonable expectation" finding is that Ace offered interstate routes initially on a volunteer basis.[18]   However, Ace's undisputed evidence shows that if the interstate route had to be assigned, Ace would indiscriminately assign the route among Texas drivers.[19]   Thus, Ace's system is more akin to the quasi-volunteer systems in several cases which have been found to still constitute indiscriminate assignment of interstate work.   *E.g.*, *Brennan v. Schwerman Trucking Co. of Virginia*, 540 F.2d 1200, 1204 (4th Cir. 1976) (finding reasonable expectation where "all trips, whether interstate or intrastate, are given to drivers on an indiscriminate basis" even though routes were "placed in a pool for selection by the individual drivers operating out of that particular area" and "[t]he drivers then choose loads on the basis of seniority with the driver with the highest seniority having first choice as to which load or trip he desires each day"); *Resch v. Krapf's Coaches, Inc.*, No. CIV.A. 11-6893, 2013 WL 4603011, at *6 & n. 14 (E.D. Pa. Aug. 29, 2013), *aff'd*, 785 F.3d 869 (3d Cir. 2015) (finding routes were assigned discriminately even though "drivers can ask for a schedule change on occasion because of the driver's personal circumstances that week," where plaintiffs admitted "that they would be subject to discipline for refusing to drive a route").

But, even if the Court finds that Ace's system is not indiscriminate, this case is <u>not</u> akin to the materially different facts in the *Butcher*[20] case relied on by the Order, which Ace's Reply distinguished in detail.[21]   The Order does not engage in any analysis of the numerous, material factual differences Ace identified between *Butcher* and this case, which require a different result here.

---

[18] Order at 7.
[19] MSJ at Ex. 2 ¶ 11.
[20] *Butcher v. TSWS, Inc.*, No. 4:10-CV-01376, 2011 WL 3793687 (S.D. Tex. Aug. 25, 2011).
[21] Reply at 14–15.

> ### iv.   The Order failed to consider key undisputed evidence that further confirms Plaintiffs' reasonable expectation of interstate driving.

In incorrectly determining that it could not decide whether Plaintiffs reasonably expected to drive interstate routes, the Order also fails to consider Ace's other significant, undisputed evidence further confirming Plaintiffs had such a reasonable expectation.  First, **Plaintiffs unequivocally testified that they knew, at all times during their employment with Ace, they could be assigned to drive an interstate route**.[22]  Both the DOT and applicable case law note that such admissions confirm a reasonable expectation of interstate driving.  Application of the Federal Motor Carrier Safety Regulations, 46 Fed. Reg. 37,902-02, 1981 WL 115508 at *37902 (Dep't of Transp. July 23, 1981) ("statements from drivers" are "[s]atisfactory evidence" of drivers' reasonable expectation of interstate driving."); *Ramos v. Capitan Corp.*, No. MO16CV00075RAJDC, 2017 WL 3712345, at *6 (W.D. Tex. July 7, 2017) (finding reasonable expectation, in part, because "Plaintiff testified in his deposition that he understood when he was hired by Defendant that he might have to make out-of-state trips during his employment").

Second, Escobedo and Alaniz were actually assigned to drive a route that would have taken them across state lines to Oklahoma (although Ace subsequently made the business decision that such route was not necessary).[23]

Third, the Order incorrectly dismisses Ace's offer letters—which state that Plaintiffs had "expectations of intrastate … and interstate driving assignments"[24]—because they were not a "contract of employment."  Order at 7.  But, regardless of whether they were "contracts," the offer letters confirm that Plaintiffs could be assigned interstate routes at any time during their employment with Ace.  *See Gonzalez v. Smith Int'l, Inc.*, 899 F. Supp. 2d 622, 635 (S.D. Tex.

---

[22] Motion at 6, 8, & nn. 31, 41–44.
[23] Motion at 8 & n. 39.
[24] MSJ at 6–7.  This evidence further shows that Ace regularly sends drivers to interstate destinations and that Plaintiffs could be assigned an interstate route at any time.

2010) (finding reasonable expectation where, among other things, plaintiffs signed documents stating as follows: "I acknowledge that during the course of my normal job duties, I am subject to travel to other states (Interstate) to perform my assigned duties.").

Given the above, a proper analysis of <u>all</u> undisputed facts relevant to the "reasonable expectation" analysis confirms that Plaintiffs had a "reasonable expectation" of interstate driving at all times during their employment.  Respectfully, the Order's finding that there is a genuine issue of material fact which precludes summary judgment on this point should be reconsidered.

> b. <u>Even if the Court Finds One or Two of the *Olibas* Factors Weigh Against a Reasonable Expectation of Interstate Driving, Ace is Nevertheless Entitled to Summary Judgment</u>

The Order states that "[w]hether the drivers reasonably expected to drive across state lines depends on [a] genuine factual dispute material to this determination, precluding summary judgment."  Order at 7.  But, the Order fails to identify <u>any</u> facts on which the parties disagree—because there are no such factual disputes.  Rather, it appears the Court believed that it could not decide the "reasonable expectation" issue on summary judgment because, in the Court's view, one or two of the *Olibas* factors weigh against a reasonable expectation finding.  But, even if that was the case (it is not, as discussed above), the Fifth Circuit has made clear that "none of [the factors] is dispositive."  *Olibas*, 838 F.3d 442 at n.11.  Moreover, the Fifth Circuit has instructed that "[a] <u>fact issue does not exist simply because facts point in both directions</u>" when examining a fact-intensive, multi-factor inquiry such as this one. *Faludi v. U.S. Shale Sols., L.L.C.*, 950 F.3d 269, 275 (5th Cir. 2020) (emphasis added, examining five-factor test for employee status under the FLSA);[25] *see also, e.g.*, *Parrish v. Premier Directional Drilling*, L.P., 917 F.3d 369, 380 (5th Cir. 2019) ("[S]ummary judgment on FLSA employee status can be granted when

---

[25] The Fifth Circuit has instructed that the analysis of whether an employee is exempt under the FLSA requires courts to "make findings of fact and conclusions of law analogous to those involved in determining employee status." *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1226 (5th Cir. 1990).

'there are facts pointing in both directions' … so long as they do not generate a genuine dispute of material fact."); *Billizon v. Conoco, Inc.*, 993 F.2d 104, 106 (5th Cir. 1993) (summary judgment appropriate on nine-factor test where "no single factor is determinative," such that "[e]ven if we assume that factor 3 weighs in favor of [non-movant's] position, the summary judgment record establishes [movant's position]").

Moreover, in deciding an FLSA exemption issue on summary judgment, "[w]hether established facts support an exemption is a question of law." *Ferrara v. 4JLJ, LLC*, 150 F. Supp. 3d 813, 816 (S.D. Tex. 2016) (citing *Lott v. Howard Wilson Chrysler–Plymouth, Inc.*, 203 F.3d 326, 330 (5th Cir. 2000)); *see also Dalheim v. KDFW-TV*, 918 F.2d 1220, 1226 (5th Cir. 1990) ("[T]he district court must make the ultimate determination of whether an employee is exempt."). The Fifth Circuit has explained that "whether the MCA exemption applies" depends on "controlling questions of law," and, therefore, is up to the Court to decide. *Allen*, 755 F.3d at 282. And "[s]ummary judgment is an appropriate mechanism for resolving issues of law arising from a materially complete factual record." *Wynne v. United States*, 306 F. Supp. 2d 660, 664 (N.D. Tex. 2004); *see also Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 998 (5th Cir. 1989) (explaining that "[n]o issues of fact are created" where the parties "merely argue[] about results that flow from the admitted facts"). Ace provided such a "complete factual record" here, with undisputed evidence on each of the eight *Olibas* factors. Thus, it is the Court's role to decide whether those undisputed facts establish Plaintiffs had a reasonable expectation of interstate driving to support application of the MCA exemption.

In fact, several courts have granted summary judgment to employers on the "reasonable expectation" inquiry even where one or more of the *Olibas* factors points against such a finding. *E.g.*, *Ramos*, 2017 WL 3712345, at *6 (finding that drivers had to reasonably expect to drive

interstate "even though there were times when they were not assigned to transport property in interstate commerce"); *Galera*, 2015 WL 1931364, at *9 (N.D. Tex. Apr. 28, 2015) (finding that drivers had to reasonably expect to drive interstate despite "Plaintiff's argument that because [supervisor] testified at his deposition that he could only remember the names of three drivers who actually towed vehicles interstate, the court should conclude that there was a separate class of tow truck drivers who completed interstate tows;" and despite plaintiff's claim that "he was told upon hire that he would only drive in Texas").  Importantly, several courts have granted summary judgment on this issue even where the court found that the employer did not indiscriminately distribute interstate routes—the primary basis on which the Order denied summary judgment on this issue.  This is because "**it is not likely that [ ] courts intended indiscriminate assignment to serve as a bright-line test**." *Songer v. Dillon Res., Inc.*, 636 F. Supp. 2d 516, 526 (N.D. Tex. 2009), *aff'd*, 618 F.3d 467 (5th Cir. 2010) (emphasis added, granting summary judgment to employer despite "Plaintiffs' conten[tion] that defendants did not distribute out of state trips indiscriminately, because only eight of the twenty-one plaintiffs actually drove across state lines"); *see also, e.g.*, *Chao v. First Class Coach Co.*, 214 F. Supp. 2d 1263, 1275–76 (M.D. Fla. 2001) (granting summary judgment to employer despite fact that employer "apparently did not assign its drivers indiscriminately" and, instead, "tr[ied] to honor the requests of a few employees that they be assigned only to local routes" including "the requests of single mothers and injured employees to drive routes close to home").

That the Court should decide the reasonable expectation issue even if the Court believes that one or two of the *Olibas* factors weigh against Ace is especially true here, because this is not a jury case.  *See generally* Plaintiff's Original Complaint—Collective Action [ECF No. 1] (making no jury demand); *see also* Joint Discovery/Case Management Plan [ECF No. 11] at 7

("No jury demand has been made at this time.").  The decision-making process on summary judgment is different when the case is to be tried before the court and not a jury.  "If [a] decision is to be reached by the court, and there are no issues of witness credibility, the court may conclude on the basis of the affidavits, depositions, and stipulations before it, that there are no genuine issues of material fact, even though [the] decision may depend on inferences to be drawn from what has been incontrovertibly proved."  *Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1123–24 (5th Cir. 1978).  In other words, in considering summary judgment in a bench trial case, the district court is "authorized to draw inferences from undisputed evidence, conclude that there were no genuine issues of material fact, and determine that [moving party] should prevail—without having to sit through a bench trial that would present largely the same evidence."  *Am. Century Proprietary Holdings, Inc. v. Am. Century Cas. Co.*, 295 F. App'x 630, 634 (5th Cir. 2008).  This is because "it makes little sense to forbid the judge from drawing inferences from the evidence submitted on summary judgment when that same judge will act as the trier of fact, unless those inferences involve issues of witness credibility or disputed material facts." *Matter of Placid Oil Co.*, 932 F.2d 394, 398 (5th Cir. 1991).

Respectfully, the Order's failure to decide, as a matter of law, whether Plaintiffs had a reasonable expectation of interstate driving on the undisputed factual record before the Court should be reconsidered.

**B.     Alternatively, the Order Should be Certified for Interlocutory Review to Permit the Fifth Circuit to Weigh in on the Correct Legal Analysis for the MCA Exemption**

If, despite the foregoing, the Court decides not to reconsider the Order, then Ace respectfully requests that the Court certify the Order for interlocutory appeal to allow the Fifth Circuit to weigh in on these controlling questions of law regarding application of the MCA exemption.  A district court may certify an interlocutory order for appeal when the court is "of

the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292. A district court may certify for interlocutory appeal an order denying summary judgment. *E.g.*, *Gonzalez v. Seal*, 702 F.3d 785, 786–87 (5th Cir. 2012) (reviewing denial of summary judgment where "[t]he district court certified two issues, and we accepted certification for interlocutory appeal"). The Fifth Circuit has expressly recognized that application of the MCA exemption is a proper legal question for interlocutory appeal. *Allen*, 755 F.3d at 282 (addressing interlocutory appeal regarding "controlling questions of law" surrounding "whether the MCA exemption applies").

Here, the resolution of Ace's MSJ turns on a controlling question of law: the proper standard for applying the MCA exemption under both methods of establishing the "interstate commerce" requirement. Under the "continuous flow" method, the Fifth Circuit should be provided an opportunity to weigh in on whether a carrier must have a "vested interest" or "involvement" in the interstate leg of the journey and whether and how the "fixed and persisting intent" inquiry applies. And, under the "reasonable expectation" prong, the Fifth Circuit should be provided an opportunity to weigh in on district courts' ability to grant summary judgment where the court believes that one or more of the *Olibas* factors weigh against a "reasonable expectation" finding, particularly based on the undisputed factual record presented here and in the context of a non-jury case like this one. If the Court does not reconsider its Order, there is substantial need for clarification on these matters, for the reasons—and based on the authorities—described above. And, an immediate appeal from the Order may materially advance the ultimate termination of the litigation since, if the Fifth Circuit finds that Ace is entitled to summary judgment, that will end the lawsuit.

Finally, Section 1292 states that "application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order."  28 U.S.C. § 1292.  If the Court decides to certify its Order for interlocutory appeal, Ace also respectfully requests that the Court stay all proceedings in this lawsuit—including without limitation any further briefing or decisions on Plaintiffs' Motions for Certification and for Approval and Distribution of Notice [ECF Nos. 29, 30]—pending such appeal.  Such a stay is in the interest of judicial economy since, if the Fifth Circuit finds that Plaintiffs qualify for the MCA exemption as a matter of law, that will end this lawsuit. Moreover, Plaintiffs will not be harmed by such a stay, and any alleged harm to members of Plaintiffs' putative collective action in this lawsuit can be fully mitigated through tolling of the statute of limitations while the appeal is pending.  Finally, Ace will be unfairly prejudiced if such a stay is not granted, since it will be forced to expend substantial resources engaging in responding to the certification motions and, if a collective action is certified, defending against collective claims that may not be necessary if the Fifth Circuit rules in Ace's favor.

## V.    CONCLUSION

For the foregoing reasons, Ace respectfully requests that the Court grant its motion, reconsider the Order and grant Ace's MSJ, and dismiss all of Plaintiffs' claims in this lawsuit with prejudice.  Alternatively, Ace respectfully requests that the Court certify its Order for interlocutory appeal to the Fifth Circuit, and stay all proceedings in this matter while such appeal is pending.  Ace also respectfully requests all other relief to which it is justly entitled.

Dated: November 23, 2022

By: */s/ Mark D. Temple*
    Mark D. Temple, a*ttorney-in-charge*
    Texas Bar No. 00794727
    Southern District ID No. 19552
    Peter J. Stuhldreher, *of counsel*
    Texas Bar No. 24056393
    Southern District ID No. 699821
    Paul M. Knettel, *of counsel*
    Texas State Bar No. 24102031
    Southern District ID No. 3005240
    Emil M. Sadykhov, *of counsel*
    Texas Bar No. 24110316
    Southern District ID No. 3385031
    **BAKER & HOSTETLER LLP**
    811 Main Street, Suite 1100
    Houston, Texas 77002
    Phone: (713) 751-1600
    Facsimile: (713) 751-1717
    mtemple@bakerlaw.com
    pstuhldreher@bakerlaw.com
    pknettel@bakerlaw.com
    esadykhov@bakerlaw.com

    **ATTORNEYS FOR DEFENDANT**
    **ACE GATHERING, INC.**

## CERTIFICATE OF SERVICE

In accordance with the Federal Rules of Civil Procedure, I hereby certify that on November 23, 2022, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send notices of this filing to all counsel of record:

Colby Qualls
Josh Sanford
Sanford Law Firm, PLLC
10800 Financial Centre Pkwy, Suite 510
Little Rock, Arkansas 72211
colby@sanfordlawfirm.com
josh@sanfordlawfirm.com

    */s/ Mark D. Temple*
    Mark D. Temple