IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

**ELIZABETH ESCOBEDO, Individually and**     **PLAINTIFF**
**on Behalf of all Others Similarly Situated**

vs.                          No. 4:22-cv-538-LHR

**ACE GATHERING, INC.**                              **DEFENDANT**

## RESPONSE TO MOTION FOR RECONSIDERATION, ETC.

### I.    INTRODUCTION

Defendant's Motion for Reconsideration of Order Denying Motion for Summary Judgment or, in the Alternative, to Certify Order for Interlocutory Appeal (hereinafter "Motion for Reconsideration") (ECF No. 37) must be denied in its entirety. In its Memorandum and Order (hereinafter "Order") (ECF No. 33), this Court properly applied the law to deny Defendant's Motion for Summary Judgment (ECF No. 26). Defendant has offered nothing that justifies a reconsideration of this Court's Order and nothing that justifies certifying this case for interlocutory appeal.

### II.    ARGUMENT: RECONSIDERATION

A.    <u>Standard of Review.</u>

Defendant requests reconsideration pursuant to Rule 59(e) and 60(b). Rule 59(e) allows a Court to "to alter a judgment based on "the need to correct clear error or prevent manifest injustice." *Jones v. Stephens*, 998 F. Supp. 2d 529, 536 (N.D. Tex. 2014). Rule 60(b), allows the Court to revisit an order due to "mistake, inadvertence, surprise, or excusable neglect" or "any other reason that justifies relief." F.R.C.P. 60(b). However, the "Fifth Circuit has instructed that motions for reconsideration under Rule 60, like Rule 59,

Page 1 of 14
Elizabeth Escobedo, et al. v. Ace Gathering, Inc.
U.S.D.C. (S.D. Tex.) Case No. 4:22-cv-538-LHR
Response to Motion for Reconsideration, Etc.

are inapposite where no final judgment has been entered." *Gilmour v. Blue Cross & Blue Shield of Ala.*, No. 4:19-CV-160-SDJ, 2021 U.S. Dist. LEXIS 60259, at *10 (E.D. Tex. Mar. 30, 2021). Rule 54(b), on the other hand, instructs that an order "that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." F.R.C.P. 54(b). Rule 54(b) permits a Court to "reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Gilmour*, 2021 U.S. Dist. LEXIS 60259, at *11.

B.    Argument.

Defendant has failed to show that reconsideration of this Court's Order on Motion for Summary Judgment is appropriate. Defendant's arguments consist largely of re-hashing its summary judgment arguments and disputes over the minutiae of governing law. However, this Court's rulings were completely consistent with the applicable standards, including the law identified by Defendant. While there are specific circumstances under which reconsideration of an Order is appropriate, one party's discontent with the ruling is simply not one of them.

*i.    This Court properly ruled on the interstate commerce issue.*

This Court correctly applied the law when ruling that Defendant failed to establish for summary judgment purposes that the essential character of the crude oil driven by Plaintiffs to pipeline injection points was interstate in nature. *See* Order, p. 6–7. Defendant attempts to construct a standard that is different from the one this Court applied by citing to various cases and pulling individual standards from that case law to the exclusion of

Page 2 of 14
Elizabeth Escobedo, et al. v. Ace Gathering, Inc.
U.S.D.C. (S.D. Tex.) Case No. 4:22-cv-538-LHR
Response to Motion for Reconsideration, Etc.

the entire body of governing standards. Moreover, the cases cited by Defendant involve very different circumstances from the present case. Defendant also demands that this Court look to its customers' intent rather than its own to determine whether Defendant's products are moving in interstate commerce, without citing any authority for doing so and despite the illogical results of doing so.

To begin with the cases cited by Defendant only underscore the propriety of the Court's decision. The three primary cases cited by Defendant, *Siller*, *Vallejo*, and *Glanville*, all have the obvious distinguishing factors from the current case, primarily that these cases involve companies that were essentially handlers or distributors of other companies' products, not a seller of the product at issue as Defendant is here.

More particularly, in *Siller*, the defendant ("L&F") was a distributor/wholesaler of Anheuser-Busch ("AB") products. *Siller v. L&F Distribs.*, No. 96-40549, 1997 U.S. App. LEXIS 42893, at *1, 4 (5th Cir. Feb. 18, 1997). AB shipped out-of-state beer to a Houston warehouse, where L&F trucks picked it up and ultimately delivered the products to retail customers. *Id*. at *6–7. The Court looked to AB's intent that the beer ultimately be distributed from the out-of-state brewery to the in-state retailers, including AB's significant control over the shipment[1] and AB's "***interest*** in making sure that its product reached South Texas in premium condition" to determine that L&F's drivers were engaged in interstate commerce. *Id*. at *7–8 (emphasis added). Consistent with this Court's ruling examining Defendant's intent regarding the crude oil at issue, the *Siller* court looked to

---

[1] The control exercised by AB included "temperature and timeliness requirements, marketing methods and disposition of products, geographic sales area determinations, and decisions concerning what products would move where and when in L&F's territory." *Siller*, 1997 U.S. App. LEXIS 42893, at *7.

Page 3 of 14
Elizabeth Escobedo, et al. v. Ace Gathering, Inc.
U.S.D.C. (S.D. Tex.) Case No. 4:22-cv-538-LHR
Response to Motion for Reconsideration, Etc.

the intent of the initial shipper, AB, as well as AB's interest in the continued journey of the products to determine L&F's involvement in interstate commerce.

In *Vallejo*, the court found that drivers, messengers and guards involved in the armored car service provided by the defendant worked in interstate commerce because they transported checks drawn on out-of-state banks which "were picked up at the ATMS; separated from the cash; transported to [defendant's] Houston facility; consolidated; and held; then given to the courier serving the specific bank on which the checks were drawn." *Vallejo v. Garda CL Sw., Inc.*, 56 F. Supp. 3d 862, 872–74 (S.D. Tex. 2014). The employees also transported coins intended for interstate circulation from a U.S. mint facility. *Id*. at 871. Accordingly, the court held that the plaintiffs "engage[d] in transportation that was part of the practical continuity of movement across state lines." *Id*. at 873. Defendant points out that the *Vallejo* court did not discuss any "vested interest" of the armored car company in the checks and coins, but there is good reason for that—the *Vallejo* defendant was not an owner shipping its own product to a customer as Defendant is in the current case, but rather was a carrier and processor of items already entered into the stream of interstate commerce by someone else that further facilitated the interstate journey.

Finally, in *Glanville*, the appliance company GE contracted with the defendant, Dupar, to handle "last leg" deliveries to GE's customers. *Glanville v. Dupar, Inc.*, No. H-08-2537, 2009 U.S. Dist. LEXIS 88408, at *5 (S.D. Tex. Sep. 25, 2009). In turn, Dupar paid the plaintiffs to perform the actual delivery service using the plaintiffs' own trucks and trailers. *Id*. GE maintained "real-time information about the movement of each appliance" as well as title and control over the appliances through delivery to the customer. *Id*. at *5.

Page 4 of 14
Elizabeth Escobedo, et al. v. Ace Gathering, Inc.
U.S.D.C. (S.D. Tex.) Case No. 4:22-cv-538-LHR
Response to Motion for Reconsideration, Etc.

The appliances were not processed or altered at the distribution center, and GE was fully responsible for the transportation costs. *Id*. at *42. Accordingly, the court held that Dupar's "last leg" distribution route was "merely the last phase of an unmistakably interstate shipment," of GE appliances that had previously crossed state lines. *Id*. Like *Vallejo* and *Siller*, the *Glanville* court looked to the intent of the initial shipper (GE) in entering the goods into the stream of interstate commerce. Although the *Glanville* court did not explicitly discuss GE's "interest" in the appliances, it is obvious that, like the beverage maker in the *Siller* case, when GE entered its appliances into the stream of commerce it had an interest in seeing, and intended, that the appliances would continue from GE's facility, across state lines, to the ultimate customer.

Critically, none of these three cases support Defendant's contention that this Court should look at the intent of Defendant's *customers*[2] to determine the nature of the shipment. The obvious result of such an analysis is inconsistent with the interstate commerce requirements. For example, if a local honey producer harvests honey from local bees, sells barrels of honey out of a local warehouse and ships barrels of honey to local addresses, that work is entirely <u>intra</u>state. That local honey producer's work is not converted to <u>inter</u>state work just because a buyer of the honey regularly ships that honey out of state to be used in the manufacture of honey-based products. A local product is not entered into interstate commerce merely because it <u>eventually</u> crosses state lines. *See*

---

[2] Defendant recognizes that it is the intent of the "shipper" that matters, but then instructs this Court that its customers are the "shipper" without any basis for this proposition. Further, under this scenario, Defendant seems to cast itself as a mere "carrier," which is inconsistent with the reality of this case in which Defendant is a buyer and seller of crude oil who ships crude oil to its customers by way of pipeline injection. *See* Declaration of Zach Weise (hereinafter "Decl. Weise") ¶ 3; Declaration of Brad Mitchell (hereinafter "Decl. Mitchell") ¶ 3–6 (instructing this Court that Defendant's business is purchasing crude oil from third-party crude oil producers for sale to various customers).

Page 5 of 14
Elizabeth Escobedo, et al. v. Ace Gathering, Inc.
U.S.D.C. (S.D. Tex.) Case No. 4:22-cv-538-LHR
Response to Motion for Reconsideration, Etc.

*Packard v. Pittsburgh Transp. Co.*, 418 F.3d 246, 255 (3d Cir. 2005) ("There is no general rule that once something (either passenger or freight) embarks on a journey that will eventually carry it between two states, every moment of that journey, through the last conceivable moment of travel, is necessarily interstate transport under the MCA.").[3]

Rather, there must be some other factors that warrant relying on the customer's intended use of the product. Defendant tries to bridge this gap by asserting that its customers maintain a level of control similar to that in *Glanville* and *Siller* because they 1) contract to buy the oil; 2) designate a delivery area; and 3) require the crude oil to meet certain specifications. But these are actions that virtually all customers take; they do not rise to the level of control maintained by the shippers in *Glanville* and *Stiller*.

Defendant also argues that this Court's "vested interest" analysis is inconsistent with governing regulations. However, the regulation relied upon by Defendant stands for the unremarkable—and uncontroverted—propositions 1) that intrastate movement can be interstate "if what is being transported is actually moving in interstate commerce" and 2) that the use of other "carriers" to move the product out of state does not convert interstate movement to intrastate movement. 29 C.F.R. § 782.7(b)(1). However, as the regulation notes, intrastate movement must be the movement of a product that is "actually moving in interstate commerce," an issue that is determined by looking to the intent of the shipper, which naturally includes the shipper's continuing interest in the product.

---

[3] *See also Alice v. GCS, Inc.*, No. 05 C 50132, 2006 U.S. Dist. LEXIS 65498, at *15–16 (N.D. Ill. Sep. 14, 2006) (recognizing that the fact that most of the construction debris hauled was eventually shipped to interstate destination "is not sufficient to give rise to a fixed intent to engage in an interstate movement at the time the [debris] left the [construction sites] with [its] final destination still unknown" (editing marks in original)); *Arlington v. Miller's Trucking, Inc.*, 2012 MT 89, ¶¶ 41-45, 364 Mont. 534, 546-47, 277 P.3d 1198, 1207-08 ("While a considerable amount of the log byproducts was eventually transported in interstate commerce, it does not appear that Miller's had a fixed intent at the time of shipment, within the meaning of the regulation, to deliver the logs to any destination but one in Montana.")

Page 6 of 14
Elizabeth Escobedo, et al. v. Ace Gathering, Inc.
U.S.D.C. (S.D. Tex.) Case No. 4:22-cv-538-LHR
Response to Motion for Reconsideration, Etc.

Further, the *Siller* court did, in fact, address the initial shipper's "***interest*** in making sure that its product reached South Texas in premium condition." 1997 U.S. App. LEXIS 42893, at *7–8 (emphasis added). Similarly, in *Musarra v. Dig. Dish, Inc.*, the court expressly referred to the "vested interest" of the shipper, DISH Network, noting that DISH Network had "a ***vested interest*** in maintaining [its service provider's] inventory," noting that "[s]hould DISH Network fail to supply [its service provider] with the product necessary to service its Ohio customers, DISH Network, not [the service provider], would stand to lose profits." 454 F. Supp. 2d 692, 694, 714 (S.D. Ohio 2006). Taken into consideration with the other surrounding factual circumstances, the court found "that in making daily shipments of equipment to [its service provider], DISH Network intends to ship its goods in interstate commerce." *Id*. at 723.

Similarly, the continued interest of the shipper in the product shipped was a primary factor in *Alice v. GCS, Inc.*, involving a company that collected construction debris throughout the state of Illinois and deposited the debris at a collection facility that commingled the debris with other products and shipped the debris out of state. No. 05 C 50132, 2006 U.S. Dist. LEXIS 65498, at *12–16 (N.D. Ill. Sep. 14, 2006). Because the collection company "no longer had an ***interest*** in or control over the refuse" once it was deposited at the collection facility, the court found that the interstate commerce requirement had not been met. *Id*. at *12.

Plaintiffs disagree with Defendant's contention that the shipper's intent only matters if the movement involved is from a storage terminal followed by prior movement in interstate commerce, but even if this contention is correct, then the proper standard is to examine Defendant's interest in the goods being shipped as set forth above. In any

Page 7 of 14
Elizabeth Escobedo, et al. v. Ace Gathering, Inc.
U.S.D.C. (S.D. Tex.) Case No. 4:22-cv-538-LHR
Response to Motion for Reconsideration, Etc.

event, Defendant has offered no support for its position that the Court should examine its customers' intent. Even the "totality of the circumstances" test Defendant claims applies under *Merchs. Fast Motor Lines v. ICC*, 5 F.3d 911 (5th Cir. 1993), weighs in favor of Plaintiffs. There, the court noted that the "ICC gave great weight to the fact that the shipper maintains control over the shipment from its out-of-state origin until it is delivered to the ultimate consignee." 5 F.3d at 917. Here, Defendant maintained no control over the crude oil as it crossed the border and Defendant has not shown that its customers' act of ordering crude oil, determining a delivery point and demanding a certain quality of product constitutes "control" as indicated in *Merchs. Fast Motor Lines*.

Similarly, Defendant's reliance on *Texas v. United States* is misplaced because that case, once again, involved a company that shipped goods from an out-of-state manufacturing facility to the company's own in-state storage facility and then distributed goods to customers from the in-state storage facility. 866 F.2d 1546, 1561 (5th Cir. 1989). Consistent with the decisions discussed above, the local leg of that transport was reasonable considered interstate rather than intrastate because it was part of a larger intrastate trip in which a single company maintained a consistent interest.

Ultimately, it seems that the parties can agree that "whether the transportation between two points in a single state is interstate or intrastate depends on the shipment's 'essential character.'" *Brown v. AGM Entm't, Inc.*, No. H-07-3439, 2008 U.S. Dist. LEXIS 51167, at *5 (S.D. Tex. July 3, 2008). Whether expressly stated or not, this Court's Order clearly examines the totality of the circumstances to determine the essential character of the shipments, noting that Defendant "purchased crude oil from producers and sold that oil to a Texas customer at a Texas location." *See* Order, p. 6. Defendant "had no vested

Page 8 of 14
Elizabeth Escobedo, et al. v. Ace Gathering, Inc.
U.S.D.C. (S.D. Tex.) Case No. 4:22-cv-538-LHR
Response to Motion for Reconsideration, Etc.

interest in the crude oil its drivers hauled crossing state lines" because Defendant "earn[s] its revenue once it sells the crude oil to its customers." *Id*. at *6–7. As a result, the essential character of the shipment is intrastate, not interstate.

From every angle, it is clear that this Court's Order complied with the standards governing whether Plaintiffs' work transporting crude oil involved interstate commerce. This Court properly determined that summary judgment in Defendant's favor was not warranted. Reconsideration of this decision is unwarranted.

    ii.    *This Court properly ruled on the "reasonable expectation" issue.*

This Court also correctly applied the law when ruling that the evidence regarding whether Plaintiffs had a "reasonable expectation" of driving in interstate commerce was "inconclusive and conflicting." *See* Order, p. 7. Defendant's argument on this issue is largely a repeat of its summary judgment arguments coupled with Defendant's own insistence that this Court should rule in Defendant's favor if more of the relevant factors[4] weigh in Defendant's favor. However, Defendant is incorrect in its assertion that all this Court need do is determine which factors weigh in favor of which party, determine which party "scores" the most factors and declare that party the winner because the relevant factors are neither dispositive nor exclusive. *See Olibas v. Barclay*, 838 F.3d 442, 449 n.11 (5th Cir. 2016); *Walters v. Am. Coach Lines of Miami, Inc.*, No. 07-22000-CIV, 2009 U.S. Dist. LEXIS 50328, at *7 (S.D. Fla. June 16, 2009).

---

[4] *Olibas v. Barclay*, 838 F.3d 442, 449 n.11 (5th Cir. 2016) (identifying the following factors as relevant to the reasonable expectation analysis: (1) whether all employees in the class have similar job duties, even if only some employees in the class make interstate trips; (2) whether the employer regularly sends some drivers to interstate destinations; (3) whether the employer requires its drivers to meet DOT requirements; (4) whether and with what frequency project assignments are subject to change; (5) whether the drivers' assignments are given via dispatch based on customer need; (6) whether drivers have fixed or dedicated routes; (7) whether assignments are distributed indiscriminately; and (8) whether drivers risk termination for refusing trips from dispatch).

Page 9 of 14
Elizabeth Escobedo, et al. v. Ace Gathering, Inc.
U.S.D.C. (S.D. Tex.) Case No. 4:22-cv-538-LHR
Response to Motion for Reconsideration, Etc.

Further, Defendant's reliance on the language of its own offer letters and Plaintiff's testimonial confirmation of their understanding of that language is wholly insufficient to establish that Plaintiffs reasonably expected to travel in interstate commerce because the standard is an objective one from the point of view of a third party observer. *Walters v. Am. Coach Lines of Miami, Inc.*, No. 07-22000-CIV, 2009 U.S. Dist. LEXIS 50328, at *4-7 (S.D. Fla. June 16, 2009); *Harrison v. Delguerico's Wrecking & Salvage*, No. 13-5353, 2016 U.S. Dist. LEXIS 75955, at *12-18 (E.D. Pa. June 10, 2016) (requiring "actual evidence" that employees made or were subject to making interstate trips). Further, common sense dictates that it would not be left for the employer to decide for itself and its employees whether there exists a "reasonable expectation" of interstate travel merely by writing it in an offer letter and having employees agree to it. This would mean that virtually no standards govern at all so long as the employer declares there is a reasonable expectation of engaging in interstate commerce.

Finally, Defendant's argument that this Court should have ruled in its favor on summary judgment ignores this Court's ruling that the evidence was both "inconclusive and conflicting." If the evidence is inconclusive, then obviously the Court is in no position to enter a summary judgment ruling in Defendant's favor. Defendant's reference to cases indicating that the Court "may" rule on summary judgment where multi-factor tests are concerned is not a mandate that a court "must" so rule, particularly when the evidence presented is inconclusive as it is in this case. Plaintiff thoroughly explained the ways in which Defendant's evidence was not only insufficient as a whole but also vague with respect to its individual components. *See* Plaintiffs' Response to Motion for Summary Judgment, p. 9–15 (ECF No. 27). This includes analysis of Defendant's data reflecting

Page 10 of 14
Elizabeth Escobedo, et al. v. Ace Gathering, Inc.
U.S.D.C. (S.D. Tex.) Case No. 4:22-cv-538-LHR
Response to Motion for Reconsideration, Etc.

that interstate loads constituted a mere 0.03% of all loads for Defendant's STX terminal where Plaintiffs worked. *Id.* at p. 12. It defies logic to suggest that Plaintiffs had a reasonable expectation of traveling in interstate commerce under these circumstances. Especially given that the test is one of the totality of the circumstances, this Court ruled correctly in denying Defendant's request for summary judgment on this issue.

In addition, Defendant's assertion that it provided a "complete factual record" upon which the Court could rule is inaccurate. In fact, Defendant's records of interstate trips provided no information regarding which employees made interstate trips—facts which are relevant to whether Defendant indiscriminately assigned interstate trips. Decl. Weise ¶ 14, Ex. F (hereinafter "Trip Summary") (ECF No. 26-2). This information was contained in the records produced by Defendant, but Defendant redacted all names except those of Plaintiffs so that this Court could not make that determination. *Id*. Questions remain regarding Defendant's assignment of interstate trips and whether Plaintiffs reasonably expected to be called upon to drive in interstate commerce—not whether Plaintiffs subjectively believed they could be called upon to drive in interstate commerce, but whether the facts of this case dictate the objective belief that Plaintiffs could be called upon to drive in interstate commerce.

The evidence is simply not so conclusive as Defendant claims. This Court properly denied Defendant's request for summary judgment, and Defendant's Motion for Reconsideration should be denied.

### III.     ARGUMENT: INTERLOCUTORY APPEAL

Finally, Defendant's request that this Court certify this case for interlocutory appeal must be denied. Interlocutory appeals "represent a rarely used exception to the strong

Page 11 of 14
Elizabeth Escobedo, et al. v. Ace Gathering, Inc.
U.S.D.C. (S.D. Tex.) Case No. 4:22-cv-538-LHR
Response to Motion for Reconsideration, Etc.

judicial policy disfavoring piecemeal appeals." *Coates v. Brazoria Cty. Tex.*, 919 F. Supp. 2d 863, 866 (S.D. Tex. 2013). The burden of demonstrating the necessity of an interlocutory appeal is on Defendant, as the moving party. *Id*. at 867. However, Defendant has failed to meet its burden of establishing that interlocutory appeal is appropriate here.

An interlocutory appeal "is only appropriate when: (1) the order from which the appeal is taken involves a 'controlling question of law'; (2) there is a 'substantial ground for difference of opinion' concerning the issue; and (3) 'an immediate appeal from the order may materially advance the ultimate termination of the litigation.'" *Id*. (citing 28 U.S.C. § 1292(b)).

Defendant's request for interlocutory appeal fails because Defendant has not established that there is a "substantial ground for difference of opinion" regarding the issues it seeks to appeal. When a request for interlocutory appeal is at issue, "judges have not been bashful about refusing to find substantial reason to question a ruling of law." *Id*. at 868. "The threshold for establishing a 'substantial ground for difference of opinion' is higher than mere disagreement or even the existence of some contrary authority." *Id*. Typical circumstances for meeting this requirement include: "if a trial court rules in a manner which appears contrary to the rulings of all Courts of Appeals which have reached the issue, if the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented." *Id*. at 868–69 (citing 4 Am. Jur. 2d Appellate Review § 123 (2012)).

As fully briefed above, this Court's decisions on summary judgment are wholly consistent with governing law. Defendant has not shown that the rulings of the Court are

Page 12 of 14
Elizabeth Escobedo, et al. v. Ace Gathering, Inc.
U.S.D.C. (S.D. Tex.) Case No. 4:22-cv-538-LHR
Response to Motion for Reconsideration, Etc.

contrary to the rulings of all Courts of Appeals addressing stream of commerce requirements and the reasonable expectation of engaging in interstate commerce, nor has Defendant shown that the circuits are in dispute on these issues. Nor are the issues novel, as substantial case law exists on the issues Defendant seeks to appeal. Defendant argues that the "Fifth Circuit has expressly recognized that application of the MCA exemption is a proper legal question for interlocutory appeal," but the propriety of interlocutory appeal is not determined based on the topic, it is determined based on circumstances indicating a substantial ground for difference of opinion.

Defendant's disagreement with this Court's ruling is simply not enough to warrant certifying an interlocutory appeal. *See Coates*, 919 F. Supp. 2d at 868 (citing *Ryan v. Flowserve Corp.*, 444 F. Supp. 2d 718, 724 (N.D. Tex. 2006). Defendant has failed to meet the burden required to justify a "rarely used exception to the strong judicial policy disfavoring piecemeal appeals." Accordingly, Defendant's request for interlocutory appeal must be denied.

## IV.    CONCLUSION

For the reasons set forth above, Defendant's Motion for Reconsideration should be denied in its entirety.

**Page 13 of 14**
**Elizabeth Escobedo, et al. v. Ace Gathering, Inc.**
**U.S.D.C. (S.D. Tex.) Case No. 4:22-cv-538-LHR**
**Response to Motion for Reconsideration, Etc.**

Respectfully submitted,

**PLAINTIFF ELIZABETH ESCOBEDO**

SANFORD LAW FIRM, PLLC
Kirkpatrick Plaza
10800 Financial Centre Pkwy, Suite 510
Little Rock, Arkansas 72211
Telephone: (800) 615-4946
Facsimile: (888) 787-2040

Josh Sanford
Tex. Bar No. 24077858
josh@sanfordlawfirm.com

*/s/ Colby Qualls*
Colby Qualls
S.D. Tex. ID No. 3740180
colby@sanfordlawfirm.com

## CERTIFICATE OF SERVICE

I, the undersigned counsel, do hereby certify that on the 7th day of December, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send electronic notice of this filing to all counsel of record in this matter, and that a true and correct copy of the foregoing RESPONSE was e-mailed to the following attorneys at the following e-mail addresses:

Mark D. Temple, Esq.
Peter J. Stuhldreher, Esq.
Emil M. Sadykhov, Esq.
Paul M. Knettel, Esq.
Baker & Hostetler LLP
811 Main Street, Suite 1100
Houston, Texas 77002
mtemple@bakerlaw.com
pstuhldreher@bakerlaw.com
esadykhov@bakerlaw.com
pknettel@bakerlaw.com

*/s/ Colby Qualls*
**Colby Qualls**

Page 14 of 14
Elizabeth Escobedo, et al. v. Ace Gathering, Inc.
U.S.D.C. (S.D. Tex.) Case No. 4:22-cv-538-LHR
Response to Motion for Reconsideration, Etc.